Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIANE REEDER, <br><br> Plaintiff, <br><br> v. <br><br> AVON PRODUCTS, INC., CHAN W. GALBATO, W. DON CORNWELL, JAN ZIJDERVELD, JOSE ARMARIO, NANCY KILLEFER, SUSAN J. KROPF, HELEN MCCLUSKEY, ANDREW G. MCMASTER, JR., JAMES A. MITAROTONDA, MICHAEL F. SANFORD, and LENARD TESSLER, <br><br> Defendants. | Case No: <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Adriane Reeder ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Avon Products, Inc. ("Avon" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Avon and Natura Cosméticos S.A. ("Natura Cosméticos"), through its affiliates Natura &Co Holding S.A. ("Natura &Co Holding"), Nectarine Merger Sub I, Inc. ("Merger Sub I"), and Nectarine Merger Sub II, Inc. ("Merger Sub II") (collectively, "Natura").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and subsequent damages took place in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Avon common stock.

7.     Defendant Avon manufactures and markets beauty and related products throughout the world. Avon is incorporated in New York, with principal executive offices located in London, England. Avon's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "AVP."

8.     Defendant Chan W. Galbato ("Galbato") is a non-executive Chairman of Avon's Board. Defendant Galbato is also the Chief Executive Officer ("CEO") of Cerberus Operations and Advisory Company, LLC.

9.     Defendant W. Don Cornwell ("Cornwell") is a director of Avon.

10.    Defendant Jan Zijderveld ("Zijderveld") is the CEO and a director of Avon.

11.    Defendant Jose Armario ("Armario") is a director of Avon.

12.    Defendant Nancy Killefer ("Killefer") is a director of Avon.

13.    Defendant Susan J. Kropf ("Kropf") is a director of Avon.

14.    Defendant Helen McCluskey ("McCluskey") is a director of Avon.

15.    Defendant Andrew G. McMaster, Jr. ("McMaster") is a director of Avon.

16.    Defendant James A. Mitarotonda ("Mitarotonda") is a director of Avon.

17.    Defendant Michael F. Sanford ("Sanford") is a director of Avon. Defendant Sanford is Senior Managing Director, Co-Head of Private Equity, and a member of the Global Private Equity Investment Committee at Cerberus Capital Management, L.P. ("Cerberus").

18.    Defendant Lenard Tessler ("Tessler") is a director of Avon. Defendant Tessler is also Vice Chairman and Senior Managing Director of Cerberus, where he is a member of the Cerberus Capital Management Investment Committee.

19.     Defendants Galbato, Cornwell, Zijderveld, Armario, Killefer, Kropf, McCluskey, McMaster, Mitarotonda, Sanford, and Tessler are collectively referred to herein as the "Individual Defendants."

20.     Defendants Avon and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

21.     Natura Cosméticos is a corporation (*sociedade anônima*) incorporated under the laws of the Federative Republic of Brazil. Natura Cosméticos is a global cosmetics group, which is comprised of Natura, Aesop, and The Body Shop brands. Natura is headquartered in Brazil.

22.     Natura &Co Holding is a corporation (*sociedade anônima*) incorporated under the laws of the Federative Republic of Brazil. Upon consummation of the Proposed Transaction, Avon and Natura Cosméticos will become wholly owned subsidiaries of Natura &Co Holding. Natura &Co Holding shares are expected to be listed on the B3 S.A. (São Paulo Stock Exchange) while Natura &Co Holding ADSs are expected to be listed on the NYSE.

23.     Merger Sub I is a Delaware corporation and a direct wholly owned subsidiary of Natura &Co Holding.

24.     Merger Sub II is a Delaware corporation and a direct wholly owned subsidiary of Merger Sub I.

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

25.     On May 22, 2019, concurrently with the execution of the merger agreement, Cleveland Apple Investor L.P. ("Cleveland"), an affiliate of Cerberus, entered into a voting and support agreement with Natura Cosméticos and Merger Sub I. As of the record date, the Avon

shares subject to the voting and support agreement "constituted approximately 16.42% of the total

outstanding Avon Shares entitled to vote at the Avon Special Meeting on an as-converted basis."[1]

26.     On or around May 23, 2019, Natura issued a press release announcing it was

acquiring Avon in an all-share transaction. As part of the transaction, a new Brazilian holding

company, Natura Holding S.A., was created.[2] Pursuant to the Proposed Transaction, Avon

stockholders would receive 0.300 Natura Holding shares for each share of Avon common stock.

As a result, Natura's shareholders would own approximately 76% of the combined company, while

Avon common stockholders would own approximately 24%. The press release states, in pertinent

part:

### Natura &Co and Avon join forces to create a Direct-to-Consumer global beauty leader

NEWS PROVIDED BY
Natura &Co

23 May, 2019, 00:53 IDT

SÃO PAULO and LONDON, 22 May 2019 /PRNewswire/ -- Natura &Co (B3: NATU3) announces that it is acquiring Avon Products, Inc. (NYSE: AVP) in an all-share transaction, creating the fourth-largest pure-play beauty group in the world and a major force for good in the industry.

---

[1] In 2015, Avon entered into definitive agreements with affiliates of Cerberus

which included a U.S. $435 million investment in Avon by Cleveland Apple Investor L.P. [], an affiliate of Cerberus, through the purchase of Avon Preferred Shares and the separation of the North America business from Avon into New Avon LLC ("New Avon"), a privately-held company that is majority-owned and managed by an affiliate of Cerberus. These transactions closed in March 2016 and Avon retained a 19.9% ownership in New Avon.

In April 2019, "a subsidiary of Avon, an affiliate of Cerberus and LG executed a unit purchase agreement providing for the sale of New Avon to LG."

[2] According to the Proxy Statement, on July 17, 2019, "Natura Holding S.A." changed its name to "Natura &Co Holding S.A."

                                        *       *       *

Avon and Natura were both founded by mission-driven individuals, reaching customers through a force of independent, primarily female micro-entrepreneurs, who act as brand ambassadors and beauty advisors. Avon is an iconic brand with a heritage of over 130 years and is the world's leading relationship selling beauty platform. Its strong brands across key beauty categories and competitive positions in a number of markets give it significant potential for future growth.

                                        *       *       *

As part of this transaction, a new Brazilian holding company, Natura Holding S.A., has been created. Based upon the fixed exchange ratio of 0.300 Natura Holding shares for each share of Avon common stock, Natura &Co's shareholders will own approximately 76% of the combined company, while Avon common shareholders will own approximately 24%. Based on Natura's undisturbed closing price on March 21, 2019, one day prior to Natura issuing the Material Fact confirming negotiations between Avon and Natura, the transaction represents a 28% premium to Avon shareholders and implies a 2018 EBITDA multiple of 9.5x or 5.6x assuming the full impact of Natura's expected synergies. Based on closing prices on May 21, 2019, the transaction values Avon at an enterprise value of US$3.7 billion and the combined group would have an enterprise value of approximately US$11 billion. Upon closing, Natura Holding S.A.'s stock will be listed on B3 with a 55% public float and it will also have ADRs listed on the NYSE. Avon shareholders will have the option to receive ADRs traded on the NYSE or shares listed on B3. Further information is available in the Material Fact which can be accessed through the following link https://natu.infoinvest.com.br/ptb/7085/19550_691987.pdf

Upon closing, the Board of Directors of the combined company will consist of 13 members, 3 of which will be designated by Avon. The transaction remains subject to customary closing conditions including approval by both Natura &Co's and Avon's shareholders as well as anti-trust authorities in Brazil and certain other jurisdictions. Closing is expected in early 2020.

UBS Investment Bank and Morgan Stanley acted as financial advisors to Natura &Co. Goldman Sachs acted as financial advisor to Avon and PJT Partners acted as financial advisor to members of the Avon Board of Directors.

                                        *       *       *

**About NATURA &CO**

Resulting from the combination of Natura, Aesop and The Body Shop, the corporate brand Natura &Co consolidates the creation of a global, multi-channel and multi-brand cosmetics group that is driven by purpose. The three companies that form the group are committed to generating positive economic, social and

environmental impact. Founded in 1969, Natura is a Brazilian multinational in the cosmetics and personal care segment, leader in direct sales. Founded in 1976 in Brighton, England, by Anita Roddick, The Body Shop is a global beauty brand that seeks to make a positive difference in the world. The Australian beauty brand Aesop was established in 1987 with a quest to create a range of superlative products for skin, hair and the body.

**About Avon Products, Inc.**

For 130 years Avon has stood for women: providing innovative, quality beauty products which are primarily sold to women, through women. Millions of independent Representatives across the world sell iconic Avon brands such as Avon Color and ANEW through their social networks, building their own beauty businesses on a full- or part-time basis. Avon supports women's empowerment, entrepreneurship and well-being and has donated over $1 billion to women's causes through Avon and the Avon Foundation. Learn more about Avon and its products at www.avonworldwide.com. #Stand4Her.

27.     On October 4, 2019, Defendants filed with the SEC a Schedule 14A Definitive Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

28.     The Proxy Statement, which recommends that Avon shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Avon's and Natura's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), and by the financial advisor that was retained by the independent non-Cerberus directors of the Board, PJT Partners LP ("PJT"); (iii) potential conflicts of interest concerning PJT; and (iv) the sales process leading up to the Proposed Transaction.

29.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Certain Forecasts; (ii) Background to the Transaction; (iii) Recommendation of the Avon Board of Directors; Avon's

7

Reasons for the Transaction; (iv) Opinion of Avon's Financial Advisor; and (v) Opinion of the Independent Non-Cerberus Directors' Financial Advisor.

30.     The shareholder vote on the Proposed Transaction is currently scheduled for November 13, 2019. Unless and until the material misstatements and omissions (referenced below) are remedied, Avon shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

## 1.     Material Omissions Concerning Avon's and Natura's Projections

31.     The Proxy Statement omits material information concerning Avon's and Natura's financial projections.

32.     Avon's management prepared prospective financial information for the calendar years 2019 through 2021 for the Company. Further, Avon's prospective financial information was extrapolated for calendar years 2022 through 2023 (collectively, the "Avon Financial Projections").

33.     With respect to the Avon Financial Projections, the Proxy Statement fails to disclose: (1) all line items used to calculate (i) adjusted operating profit, (ii) adjusted EBITDA, (iii) adjusted EBITDA less CAPEX, and (iv) unlevered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

34.     Natura Cosméticos provided Avon's management with prospective financial information that was subsequently modified by Avon's management to make certain downward adjustments (the "Natura Cosméticos Financial Projections").

35.     With respect to the Natura Cosméticos Financial Projections, the Proxy Statement

fails to disclose: (1) all line items used to calculate (i) adjusted EBITDA, (ii) adjusted EBITDA less CAPEX, and (iii) unlevered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

36.     When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[3]

37.     The disclosure of Avon's and Natura's projected financial information is material because it would provide Avon shareholders with a basis to project the future financial performance of Avon and the combined company, and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Avon

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 22, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

and its financial advisors, Avon shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinions in determining whether to vote for or against the Proposed Transaction.

38.     Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Avon Financial Projections and Natura Cosméticos Financial Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Avon shareholders.

**2.   Material Omissions Concerning Goldman's and PJT's Financial Analyses**

40.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by the Company's financial advisors, Goldman and PJT.

41.     With respect to Goldman's "*Illustrative Present Value of Future Share Price Analysis – Avon Stand-Alone,*" the Proxy Statement fails to disclose: (1) Goldman's basis for applying a range of enterprise value to next twelve months ("NTM") EBITDA (referred to as "NTM EV/EBITDA") multiples of 7.0x to 8.0x; (2) the liquidation value of the Avon preferred shares, Avon's pension deficit, the non-controlling interest of Avon, and Avon's net debt; (3) the number of fully diluted Avon common shares estimated to be outstanding as of December 31, 2019 and December 31, 2020; and (4) the individual inputs and assumptions underlying Goldman's

application of a 10% discount rate.

42.     With respect to Goldman's "*Illustrative Present Value of Future Share Price Analysis – Natura &Co Holding Pro Forma*," the Proxy Statement fails to disclose: (1) Goldman's basis for applying a range of NTM EV/EBITDA multiples of 9.0x to 10.0x; (2) Avon's pension deficit, the non-controlling interest of Avon, the pro forma adjusted net debt of Avon and Natura Cosméticos, and the net cash proceeds from the capital reduction of Natura (Brasil) International B.V. Netherlands; (3) the number of fully diluted Natura &Co Holding shares estimated to be outstanding as of December 31, 2019 and December 31, 2020; (4) the dividends per Natura &Co Holding share expected to be paid to those holders in calendar years 2019 and 2020; and (5) the individual inputs and assumptions underlying Goldman's application of an 8.8% discount rate.

43.     With respect to Goldman's "*Illustrative Discounted Cash Flow Analysis – Avon Stand-Alone*," the Proxy Statement fails to disclose: (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 10.0%; and (ii) perpetuity growth rate ranging from 1.0% to 2.0%; (2) all line items used to calculate unlevered free cash flows; (3) the range of illustrative terminal values for Avon; (4) the liquidation value of the Avon preferred shares, Avon's pension deficit, the non-controlling interest of Avon, and Avon's net debt; and (5) the number of fully diluted outstanding Avon common shares.

44.     With respect to Goldman's "*Illustrative Discounted Cash Flow Analysis – Natura &Co Holding Pro Forma*," the Proxy Statement fails to disclose: (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.5% to 9.5%; and (ii) perpetuity growth rate ranging from 1.0% to 2.0%; (2) all line items used to calculate unlevered free cash flow; (3) the range of terminal values for Natura &Co Holding; (4) Avon's pension deficit, the noncontrolling interest of Avon, and Avon's and Natura's pro forma adjusted net debt; and (5) the

number of fully diluted outstanding shares of Natura &Co Holding.

45.    With respect to PJT's "*Selected Comparable Company Analysis*," the Proxy Statement fails to disclose: (1) the companies observed by PJT in its analysis; (2) the individual multiples and financial metrics of each of the selected companies utilized by PJT in its analysis; (3) PJT's basis for selecting a TEV to EBITDA multiple range of 6.25x to 7.25x for 2019E EBITDA and 5.75x to 6.75x for 2020E EBITDA for Avon; (4) the fully diluted number of shares of Avon common stock; (5) PJT's basis for selecting a TEV to EBITDA multiple range of 9.0x to 11.0x for 2019E EBITDA and 7.5x to 9.5x for 2020E EBITDA for Natura Cosméticos; and (6) the fully diluted number of shares of Natura Cosméticos  stock.

46.    With respect to PJT's "*Discounted Cash Flow Analysis*" of Avon, the Proxy Statement fails to disclose: (1) all line items used to calculate unlevered free cash flow; (2) the ranges of terminal values of Avon as of December 31, 2023; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.5% to 10.5%; and (ii) perpetuity growth rate range of 0.5% to 1.5%; (4) estimated net debt as of March 31, 2019; and (5) the fully diluted number of shares of Avon common stock.

47.    With respect to PJT's *Discounted Cash Flow Analysis* of Natura Cosméticos, the Proxy Statement fails to disclose: (1) all line items used to calculate unlevered free cash flow; (2) the ranges of terminal values of Natura Cosméticos; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.5% to 10.5%; and (ii) perpetuity growth rate range of 3.0% to 4.0%; (4) estimated net debt as of March 31, 2019; and (5) the fully diluted number of shares of Natura Cosméticos stock as of May 21, 2019.

48.    With respect to PJT's "*Discounted Equity Value Analysis*" of Avon, the Proxy Statement fails to disclose: (1) PJT's basis for utilizing NTM TEV/EBITDA multiples of 6.25x

and 7.25x; (2) Avon's estimated net debt; (3) the fully diluted number of shares of Avon common stock; and (4) the individual inputs and assumptions underlying PJT's application of a discount rate of 15.0%.

49.     With respect to PJT's "*Discounted Equity Value Analysis*" of Natura Cosméticos, the Proxy Statement fails to disclose: (1) PJT's basis for utilizing NTM TEV/EBITDA multiples of 9.0x and 11.0x; (2) Natura Cosméticos' estimated net debt; (3) the fully diluted number of shares of Natura Cosméticos' stock as of May 21, 2019; and (4) the individual inputs and assumptions underlying PJT's application of a discount rate of 12.0%.

50.     With respect to PJT's "Has/Gets" analysis, the Proxy Statement fails to disclose: (1) the individual inputs and assumptions underlying the (i) discount rate of 10.0%; and (ii) perpetuity growth rates of 1.0% and 3.5%; and (2) the fully diluted number of shares of Avon common stock as of May 21, 2019.

51.     With respect to PJT's research analysts' price targets analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by PJT in the analysis; (2) the sources thereof; and (3) the individual inputs and assumptions underlying PJT's application of a 15% and 12% discount rate for Avon shares and Natura Cosméticos shares, respectively.

52.     The valuation methods, underlying assumptions, and key inputs used by Goldman and PJT in rendering their purported fairness opinions and/or analyses must be fairly disclosed to Avon shareholders. The description of Goldman's and PJT's fairness opinions and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Avon shareholders are unable to fully understand Goldman's and PJT's fairness opinions and/or analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This

omitted information, if disclosed, would significantly alter the total mix of information available to Avon shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving PJT

53.    The Proxy Statement omits material information concerning potential conflicts of interest involving PJT.

54.    The Proxy Statement provides the following:

> During the past two years preceding the date of its written opinion, PJT Partners advised Cerberus on a matter unrelated to Avon or the Transaction, for which PJT Partners has received U.S. $2 million. In addition, a partner of PJT Partners, who was not a member of the PJT Partners deal team advising the independent non-Cerberus directors in connection with the Transaction, is the son of W. Don Cornwell, an independent non-Cerberus director of the Avon board of directors. During the past two years preceding the date of its written opinion, PJT Partners did not advise or receive any compensation from Natura Cosméticos.

55.    The Proxy Statement, however, fails to disclose whether PJT has provided services to Avon and/or its affiliates, as well as the timing and nature of providing such services and the amount of compensation received by PJT for providing such services.

56.    The Proxy Statement fails to disclose the specific timing and nature of the services PJT provided to Cerberus.

57.    The Proxy Statement fails to disclose the reasons the "independent non-Cerberus directors" failed to engage a financial advisor that did not previously provide services to Cerberus and/or its affiliates.

58.    Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight

to place on that analysis.

59.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Avon shareholders.

####     4.  Material Omissions Concerning the Sales Process Leading to the Proposed Transaction

60.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

61.     The Proxy Statement provides that "on August 29, 2018, Avon executed a confidentiality agreement with Company A and thereafter directed Avon's tax advisors to provide the limited tax information requested by Company A."

62.     The Proxy Statement, however, fails to disclose whether Avon's confidentiality agreement contained a standstill provision with a "don't ask, don't waive" ("DADW") provision (including its time of enforcement) that would preclude Company A from making a superior offer for Avon.

63.     Without this information, Avon shareholders may have the mistaken belief that Company A was or is permitted to submit superior proposals for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable Avon shareholder would want to know, prior to voting for or against the Proposed Transaction, whether Company A is or was foreclosed from submitting a superior proposal.

64.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Avon shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

67.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

68.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

69.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

17

or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

75.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

76.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

77.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

18

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: October 23, 2019                          Respectfully submitted,

                                                 **HALPER SADEH LLP**

                                                 By: /s/ Daniel Sadeh
                                                 Daniel Sadeh, Esq.
                                                 Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                 375 Park Avenue, Suite 2607
                                                 New York, NY 10152
                                                 Telephone: (212) 763-0060
                                                 Facsimile: (646) 776-2600
                                                 Email: sadeh@halpersadeh.com
                                                 Email: zhalper@halpersadeh.com

                                                 *Counsel for Plaintiff*